UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case Nos. 15-cr-00010-SI-1 |
| Plaintiff, | 18-cv-00643-SI |
| v. | **ORDER GRANTING MOTION TO VACATE UNDER 28 U.S.C. § 2255** |
| MONICA COBBINS, | Re: Dkt. No. 427 |
| Defendant. | |

Petitioner Monica Cobbins, who is currently on probation, has filed this motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. Dkt. No. 427. For the reasons discussed below and at the hearings held on April 20, May 11, and October 26, 2018, the Court GRANTS the motion and VACATES the sentence the Court imposed on February 17, 2017.

## BACKGROUND

### I.     Factual Background

On January 6, 2015, petitioner was charged with one count of conspiracy to file false claims against the United States, in violation of 18 U.S.C. § 286, and one count of making false, fictitious, or fraudulent claims against the United States, in violation of 18 U.S.C. § 287, based on her role in the filing of federal income tax returns that falsely claimed education expenses under the American Opportunity Tax Credit (AOTC). Dkt. No. 1. As alleged in the indictment,

> The AOTC is a refundable federal income tax credit that reduces the amount of federal tax owed and can result in a refund if the credit exceeds the amount of taxes owed. The AOTC is available for post-secondary education expenses such as tuition, fees, and course materials paid by the student, their spouse, or one claiming the student as a dependent on their tax return.

United States District Court
Northern District of California

*Id.* ¶ 1.

Count One of the indictment charged that petitioner and four others, at co-defendant Josiah Larkin's tax preparation firm, from November 2012 through August 2013, "agreed, combined, and conspired to defraud the United States by obtaining, and aiding others to obtain, the payment and allowance of false, fictitious, and fraudulent claims." *Id.* ¶ 8. The indictment further charged that, "[a]s part of the scheme, the defendants filed with the IRS, or assisted in filing, federal income tax returns falsely claiming that education expenses ranging from $3,816 to $4,000 had been paid and the taxpayers were therefore eligible for the AOTC and a corresponding tax refund." *Id.* ¶ 9.

Petitioner began working for Larkin in December 2012, inputting client tax information. Dkt. No. 200 ¶ 2(a) ("Cobbins Plea"). In mid-January 2013, petitioner's job changed and she began recruiting clients to the firm. *Id.* ¶ 2(b). In approximately March 2013, once recruiting slowed down, petitioner began preparing tax returns claiming the AOTC. *Id.* ¶ 2(d). Petitioner and her co-defendants, minus Larkin, all pleaded guilty before trial. Dkt. Nos. 81 ("Choice Plea"), 139, 174, 200. Two co-defendants, Ursula Choice and Krishell Robinson, testified against Larkin. On September 15, 2016, the jury convicted Larkin on all counts that proceeded to trial. Dkt. No. 261.

## II.     Plea Agreement and Sentencing

On September 1, 2016, petitioner pleaded guilty to Count One, and the government dismissed the remaining count. At the plea hearing, the following colloquy regarding restitution took place:

> **The Court:** Will there be restitution, Ms. Stier?
>
> **Ms. Stier [AUSA]:** Yes, Your Honor. That will be determined by the Court.
>
> **The Court:** Do you have any idea how much?
>
> **Ms. Stier:** Well, Your Honor, the -- the restitution will not be less than $2000. But we have to determine her role in the conspiracy to determine how much it is for all of the tax returns in which she had a role in [sic] within the conspiracy. We have not made that determination yet.
>
> **The Court:** Is that right, Mr. Lowenstein?
>
> **Mr. Lowenstein [petitioner's counsel]:** Yes, that is exactly correct. There were several tax preparers who prepared taxes that's [sic] alleged to have been fraudulent.

> Ms. Cobbins' role in that was very limited, to only a certain amount of tax returns that she helped prepare. And so the restitution will be limited to the amount of loss, based on those returns.

Dkt. No. 408 at 5:23-6:15.

That same day, petitioner signed the written plea agreement, which stated that she agreed: "to pay full restitution for all losses caused by all the schemes or offenses with which I was charged in this case, and I understand that the amount of restitution will not be limited to the loss attributable to the count to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3)." Cobbins Plea ¶ 9.

Tragically, Mr. Lowenstein passed away prior to sentencing. Brian Berson, who is also representing petitioner on her § 2255 motion, was appointed to represent petitioner at her sentencing. The government and the Probation Officer recommended restitution for the total actual loss to the IRS, in the amount of $184,798 (joint and several). Dkt. Nos. 329, 335 at 4-5. Petitioner did not argue for apportionment of the restitution. On February 17, 2017, the Court sentenced petitioner to five years of probation; nine months of electronic monitoring; restitution in the amount of $184,798, jointly and severally; and additional fees.[1] Dkt. No. 351 ("Judgment"). Petitioner was to pay restitution in monthly payments of not less than $100 or at least 10 percent of earnings. *See id.* at 5. At a subsequent proceeding in June 2017, the Court reduced petitioner's monthly restitution payments to $50. Dkt. No. 394.

### III.    The Present Motion

On January 30, 2018, petitioner filed the present motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence, alleging ineffective assistance of counsel. Dkt. No. 427 ("Mot. to Vacate"). The government opposed. Dkt. No. 439 ("Gov't Opp'n"). The crux of petitioner's argument is that her prior counsel was deficient in negotiating her plea agreement and at the plea hearing by failing to explain to petitioner the correct terms of the written plea agreement and by failing to advise her of her right to have the Court consider her financial circumstances in setting

---

[1] At their sentencings, the Court ordered co-defendants Larkin and Robinson to pay restitution of $184,798. Co-defendants Choice and Thomalyn Virden were ordered to pay restitution of $18,500 and $6,838, respectively.

United States District Court
Northern District of California

restitution.

On April 20, 2018, the Court held a hearing on petitioner's § 2255 motion. For the reasons set forth at that hearing and in this Order, the Court indicated that it intended to grant the motion, vacate the sentence, and resentence petitioner to a new sentence that included a lower restitution amount. The government requested a further hearing to allow time to formulate a restitution recommendation, because the government had not yet been able to calculate the loss attributable to petitioner's conduct. The Court set a further hearing for April 25, 2018.

Prior to the April 25 hearing, the parties filed a stipulation to reschedule the hearing to May 11, allowing the parties additional time to attempt to resolve the restitution issue. Dkt. No. 446. The stipulation stated that at the May 11 hearing, the parties anticipated the following:

> a. That the court vacate the guilty plea entered September 1, 2016, and the sentence entered February 22, 2017;
>
> b. that defendant Monica Cobbins enter an open plea;
>
> c. that the Court and the parties rely on the Presentence Report prepared for Monica Cobbins' prior sentencing on February 22, 2017, and other information and argument that might be brought to the Court's attention;
>
> c. that this Court re-sentence Monica Cobbins and impose restitution in an amount to be set by the Court at sentencing if not agreed to by the parties in advance.

*Id.* at 2.

At the May 11, 2018 hearing, defense counsel represented that the parties agreed petitioner's conviction and sentence needed to be vacated, but that they were unable to agree on an amount of restitution. The parties requested an additional extension of time for defense counsel to review 50,000 pages of recently produced discovery. Counsel for the government stated that the Court could use the existing Presentence Report ("PSR") prepared by the Probation Officer but that there might need to be additional updates on petitioner's economic circumstances. The criminal minutes for the hearing state, "The parties are anticipating entering into an open plea agreement." Dkt. No. 449. Based on defense counsel's trial schedule, the parties agreed to continue the matter to August 10, 2018. The parties then filed several more stipulations requesting that the hearing be continued, ultimately setting a hearing date for October 26, 2018. *See* Dkt. Nos. 455, 461.

On September 24, 2018, petitioner filed a status statement and sentencing brief. Dkt. No.

460 ("Def.'s Memo"). On October 9, 2018, the United States filed its own status statement. Dkt. No. 463 ("Gov't Memo"). Petitioner filed a reply on October 23, 2018. Dkt. Nos. 466, 467. The matter came on for further hearing on October 26, 2018.

**LEGAL STANDARD**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released" who wishes to attack collaterally the validity of his conviction or sentence must do so by filing a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 in the court which imposed the sentence. 28 U.S.C. § 2255(a). Under 28 U.S.C. § 2255, the federal sentencing court is authorized to grant relief if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *See Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). If the court finds that relief is warranted under § 2255, it must "vacate and set the judgment aside" and then do one of four things: "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).

**DISCUSSION**

**I.     Ineffective Assistance of Counsel**

Petitioner argues her counsel misinformed her about the restitution portion of her plea agreement and as such she received ineffective assistance of counsel in violation of the Sixth Amendment. Petitioner states her counsel was deficient in telling her and the Court that restitution would be apportioned when the written plea agreement held otherwise. She says she understood the plea agreement to apportion restitution based on her involvement in the fraudulent scheme, and also that she was unaware she was statutorily entitled to have the Court take her financial circumstances into account when setting restitution. Mot. to Vacate at 3, 8, 10. Petitioner claims she would not have waived this right had she known it existed and that she did not knowingly agree to what was

United States District Court
Northern District of California

in the written plea. *Id.* at 8; Dkt. No. 427-2 ("Cobbins Decl.") ¶ 6. Petitioner requests the Court vacate her sentence and conviction. Mot. to Vacate at 10.

The government asserts there was no agreement to apportion petitioner's restitution. Gov't Opp'n at 3. The government states that "the apportionment issue was difficult in this case because Robinson, Choice and Cobbins are single mothers whom Larkin hired to carry out the fraudulent scheme. Robinson, Choice and Cobbins furthered the conspiracy with knowledge of the fraudulent scheme. Accordingly, the government's Sentencing Memoranda, and the PSRs, recommended $184,798 in restitution for these defendants." *Id.* at 4. The government states that petitioner "argued for a lower restitution figure" at sentencing but was denied by the Court. *Id.* The government also argues that because the restitution order has become a final judgment it may not now be amended. *Id.* at 5-6.

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must establish two things. First, she must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, she must establish that counsel's deficient performance prejudiced her, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* at 56 (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

### A.    Deficient Representation

The Court finds petitioner's former counsel was deficient under the standard articulated in *Strickland* and *Hill*. The description given during the plea hearing of how restitution would be calculated clearly differs from the actual calculus used. Both counsel for petitioner and for the government represented in open court that restitution would be lower, and calculated differently, than what petitioner agreed to in writing. Although defense counsel "cannot be required to accurately predict what the jury or court might find, . . . he can be required to give the defendant the tools he needs to make an intelligent decision." *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002). Petitioner's counsel failed to do so when he negotiated a written plea agreement that held his client liable for restitution far greater than what counsel told her she would pay. As such, counsel's representation was deficient.

### B.    Prejudice

Petitioner argues she was prejudiced by her prior counsel's deficiencies because her replacement counsel was unaware of the deficiencies in the plea negotiation process and based his representations at sentencing on the written plea agreement. Mot. to Vacate at 8-10; Dkt. No. 441 at 3. Had current counsel "known that both prior counsel and government counsel told the Court that they'd negotiated the apportionment agreement described by both at the time of the guilty plea, he would have either: 1) moved to withdraw Ms. Cobbins' plea for the same reasons supporting this 2255 motion; or 2) asked the Court to follow the apportionment agreement." *Id.* at 9. The government does not address the prejudice prong directly in its opposition; rather, its argument is limited to claiming there was no apportionment agreement. *See* Gov't Opp'n at 2-4.

Petitioner does not outright state she would have rejected the plea and proceeded to trial. *See Hill*, 474 U.S. at 58-59. "Insistence on going to trial 'does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations.'" *De Morais v. United States*, No. 10-cr-00557-WHO, 2015 WL 2357555, at *5 (N.D. Cal. May 15, 2015) (quoting *Missouri v. Frye*, 566 U.S. 134, 148 (2012)). The Court finds there is a reasonable probability that, but for her counsel's deficiencies, the outcome would have been

different. Given the conflicting representations by petitioner's counsel and counsel for the government at the plea hearing, it is possible that petitioner would not have entered into the plea agreement at all, had she known that it required her to pay full restitution for all losses caused by the scheme. There is also a reasonable probability that, had she argued for lower restitution at sentencing, the Court would have sentenced her differently.

Petitioner's co-defendant Ursula Choice made such an argument and received a much lower restitution order. The indictment charged Choice with one count of conspiracy and ten counts of filing false claims. In the PSR, the U.S. Probation Officer found that as part of her role in the scheme, Choice prepared 236 fraudulent tax returns, claiming $241,706. Dkt. No. 360 ("Choice PSR") ¶ 41. The PSR showed Choice had liabilities totaling $502, a monthly income of $2,702.26, and monthly cash flow of $1,722.26. *Id.* ¶ 100. Probation recommended, and the government agreed, that Choice should pay full restitution of $184,798. *Id.* at 27; Dkt. No. 393 at 1, 4-5. At sentencing, however, Choice's counsel requested the Court apportion the loss and take Choice's financial circumstances into account, pursuant to 18 U.S.C. § 3664(h). *See* Gov't Opp'n at 4. Choice requested that the Court order restitution of ten percent of the overall loss figure, and the Court agreed, sentencing Choice to pay restitution in the amount of $18,500. Dkt. No. 400 at 5.

The record here shows that petitioner played a similar, perhaps even more limited, role in the scheme as did her co-defendant Choice. The indictment charged petitioner with one count of conspiracy and one count of filing false claims. Petitioner's PSR found that she prepared sixty-three fraudulent tax returns, claiming $63,853 total.[2] Dkt. No. 359 ("Cobbins Am. PSR") ¶ 36. Her financial circumstances were more modest than Choice's: at the time of the PSR, petitioner had liabilities totaling $1,850. *See id.* ¶ 131. She had monthly income and monthly cash flow of $1,040. *Id.* She also now owes $2,000 in back taxes, according to her latest brief. *See* Dkt. No. 466 at 6 n.1. As with Choice, Probation and the government recommended the Court order petitioner pay the full restitution of $184,798. Cobbins Am. PSR at 35; Dkt. No. 335 at 1, 4-5.[3] Petitioner,

---

[2] As will be explained further below, the government now believes that it can verify petitioner played a role in the filing of a total of fifty-three false returns. *See* Gov't Memo at 3-5.

[3] The Court notes, however, that Choice's plea agreement differed from petitioner's in that

8

United States District Court
Northern District of California

however, did not make a request for lower restitution at sentencing because the written plea agreement precluded it.[4]  *See* Dkt. No. 441 at 3.  She was sentenced to pay restitution of $184,798.  *See* Judgment at 4.

Given the similarities between their roles in the scheme and their financial circumstances, yet the different restitution outcomes between Choice and petitioner, petitioner has shown a reasonable probability that the result of her sentencing would have been different had she not received ineffective assistance of counsel.

## II.     Jurisdiction

The government also argues the Court lacks a "jurisdictional basis to enter an amended judgment reducing restitution" because the restitution order is a final judgment.  Gov't Opp'n (citing 18 U.S.C. § 3664(o)).  The Court finds the government's jurisdiction argument is without merit because petitioner does not ask that the Court "make a change" to the restitution order.  As detailed above, petitioner has requested that the Court vacate the original judgment, allow her to enter an open plea, and resentence her.  Moreover, nothing about the judgment being final precludes the relief that petitioner seeks here.  A § 2255 motion is the statutory vehicle for a challenge to a final criminal judgment.  *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("When Congress enacted § 2255 in 1948, it simplified the procedure for making a collateral attack on a final judgment entered in a federal criminal case").  The government's argument is misplaced.

## III.    Remedy

Because the Court finds it appropriate to grant the § 2255 motion for ineffective assistance of counsel, the Court is now tasked with determining the proper amount of restitution upon

---

it lacked any language stating Choice would pay restitution for all losses caused by all schemes.  *See generally* Choice Plea.

[4] Although the government argues in its opposition that petitioner argued for reduced restitution at sentencing, a reading of the transcript in context shows this was not the case.  Defense counsel noted for the record that petitioner would have $185,000 of restitution for a scheme from which she "probably made less than $6,000" but counsel did not in any way argue for a reduction of the restitution amount.  *See* Dkt. No. 370 at 7:8-9:19.

resentencing. The parties disagree as to whether the Mandatory Victims Restitution Act ("MVRA"), as codified at 18 U.S.C. § 3663A, applies in this case. The government argues that the MVRA applies and thus restitution is mandatory, regardless of the defendant's financial circumstances. Gov't Memo at 7-8. Petitioner argues that the government never previously cited the MVRA and should be precluded from doing so now. The Court need not resolve this dispute because petitioner relies on 18 U.S.C. § 3664(h) as the basis for her argument that the Court may apportion restitution based on a defendant's financial circumstances. The MVRA states that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664." 18 U.S.C. § 3663A(d). Thus, under either party's construction, § 3664 applies to this case.

Section 3664(h) states:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

*Id.* § 3664(h).

Six months have passed since the initial hearing on the § 2255 motion, when the parties requested additional time to engage in discussions about the proper amount of restitution if the Court grants the motion. The parties have been unable to reach agreement. Petitioner now asks that she be resentenced to pay restitution of $16,516. Def.'s Memo at 5. She reached this amount by doubling the amount of money that she received from her work at co-defendant Larkin's business: $8,058 in checks from Larkin as well as a cash bonus of $200. *Id.*

The government argues that the proper amount of restitution is the amount the Court originally ordered, which it states is "the actual loss the IRS suffered": $184,798, jointly and severally with co-defendants Larkin and Robinson. Gov't Memo at 2. The PSR initially found petitioner prepared sixty-three returns claiming $63,853 in false educational tax credits; however, the government has since lowered this figure to fifty-three, stating that "at least fifty-three AOTC returns were either prepared by defendant, or she provided assistance." *Id.*; Cobbins Am. PSR at 9. Despite the six-month extension of time, the government remains unable to provide the Court with a figure as to the amount of losses attributable to those fifty-three returns. The government argues

that because petitioner was convicted of a conspiracy, and because her role in the conspiracy was not "insignificant or minor," she should be held accountable for the full actual loss caused by the conspiracy. Gov't Memo at 8-9.

Both parties acknowledge the difficulty here of calculating the precise amount of loss attributable to petitioner Cobbins's role in the conspiracy. Petitioner apparently began some tax returns that were finished by others, she lent her tax preparer number (PTIN) to others to prepare and complete tax returns, and she prepared some returns that do not bear her PTIN or name. Def.'s Memo at 3-4. She also worked as a recruiter for Larkin's firm prior to becoming a tax preparer and thus contributed to the filing of false returns that she did not herself directly prepare. *Id.* at 4. In all, "Ms. Cobbins acknowledges preparing hundreds of returns[,]" which includes "preparing dozens of tax returns with phony educational expenditures." *Id.* at 3.

Looking to co-defendant Choice's sentencing may prove instructive. Choice requested the Court consider 18 U.S.C. § 3664(h), arguing that her role in the fraudulent scheme was limited and that the PSR showed her financial inability to pay the full restitution amount. Dkt. No. 392 at 11. Choice argued that roughly ten percent of the total amount, or $18,500, was fair. *Id.* Choice also suggested, in fairness, the Court amend the judgment of the other defendants (except Larkin) to avoid disparity. *Id.* at 12. Counsel for the government agreed with Choice's counsel at the sentencing, stating that "[t]he 10 percent I think should probably be based on her economic situation" and also that "the evidence was clear that for a significant portion of the returns that she prepared, the 236, she did not know that that was illegal"). *See* Dkt. No. 465 at 9:10-16, 10:18-22. It is thus on § 3664(h) that the Court relied in ordering a lower restitution amount for Choice.

Part of petitioner's ineffective assistance argument is that her counsel was unable to make the argument Choice made at sentencing because her right to do so had been bargained away and petitioner's later counsel, having read the terms of the written plea agreement, was unaware that he could have argued for apportionment. The Court finds that granting petitioner the same restitution as Choice is reasonable after comparing the circumstances of each and in light of the factors listed in § 3664(h). Petitioner had a similarly limited role in the fraudulent scheme as Choice had, or perhaps even more limited. Neither initiated the fraudulent scheme; rather both went to work for

Larkin in late 2012 or early 2013. *See* Cobbins Am. PSR ¶¶ 37, 44. Initially, both petitioner and Choice believed the business to be a legitimate one, though each continued to work for Larkin after they realized they were participating in a fraud. Petitioner recruited clients for Larkin until about March 2013, when she began preparing tax returns for clients. Choice, along with co-defendant Robinson, was one of Larkin's two main tax preparers. *Id.* ¶ 44. Petitioner was charged with fewer counts in the indictment and indisputably filed fewer tax returns than did Choice or Robinson. Her culpability is also far lower than that of Larkin, who has already been sentenced to pay the full restitution to the IRS. Based solely on the number of tax returns prepared, it is arguable that Choice played a larger role in the conspiracy than did petitioner.

Moreover, petitioner's financial circumstances were similar to or even more modest than those of Choice at the time of sentencing. *Compare id.* ¶¶ 131-32 (petitioner's monthly cash flow: $1,040) *with* Choice PSR ¶¶ 101-02 (Choice's monthly cash flow: $1,722.26). Like Choice, petitioner is unmarried with two children. *See* Cobbins Am. PSR ¶ 103; Choice PSR ¶¶ 81-82. At the April 2018 hearing, defense counsel stated that petitioner is currently working cleaning streets in the Tenderloin. Her recent filing states that her mother died unexpectedly in December 2017 and that petitioner is now caring for her mother's 6-year-old adopted child in addition to her own 15-year-old son. Def.'s Memo at 5. In addition to having several minor dependents, she lives in subsidized housing and earns less than $13,000 per year (at least as of the writing of the PSR). *See id.*; Cobbins Am. PSR ¶ 131.

The government attempts to distinguish petitioner's situation from that of Choice, arguing that petitioner was aware of the fraud as early as January 22, 2013, the date that she filed her own fraudulent tax return. Gov't Memo at 3. The government argues that the Court held co-defendant Choice responsible for ten percent of the total loss after "finding she was unaware of the fraud until March 2013, after most of the AOTC returns had been filed." *Id.* at 2. However, neither party raised this theory in Choice's presentencing papers, and the transcript for Choice's sentencing does not support the government's argument that this is why Choice received a lower restitution order.

The government also argues that the Court may not consider petitioner's financial circumstances, citing 18 U.S.C. § 3664(f)(1)(A). *Id.* at 8. That subsection states, "In each order of

restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). However, subsection (f)(1)(A) must be read in conjunction with subsection (h), which states that "the court may . . . apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant" in cases where more than one defendant has contributed to the loss. *See id.* § 3664(h). Here, the Court is not ordering less than the full amount of restitution to the victim. Co-defendant Larkin still has a restitution order to pay the full amount of loss to the IRS of $184,798, jointly and severally, as does co-defendant Robinson. Rather, the Court is utilizing § 3664(h) because it finds apportionment of liability for the restitution is warranted here, given the multiple defendants involved, petitioner's role in contributing to the IRS's loss, and petitioner's economic circumstances.

Pursuant to 18 U.S.C. § 3664(h), therefore, the Court finds it reasonable to vacate petitioner's sentence and resentence her to the same sentence but with reduced restitution based on her limited role in the conspiracy and her ability to pay. The Court finds it reasonable on resentencing to order that petitioner pay restitution of approximately ten percent of the total loss to the IRS, or $18,500.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS petitioner's motion under 28 U.S.C. § 2255 and VACATES the sentence imposed on February 17, 2017. The Court has accepted petitioner's application to enter an open plea of guilty to Counts One and Twenty-Nine and RE-SENTENCES petitioner Monica Cobbins to the same sentence as previously imposed, with the exception of the amount of restitution. Petitioner shall pay restitution of $18,500.00, jointly and severally, at the monthly rate of $50.00. *See* Dkt. Nos. 468, 469, 470.

**IT IS SO ORDERED**.

Dated: November 5, 2018

SUSAN ILLSTON
United States District Judge
13